The following constitutes
the order of the court. Signed May 15, 2012



_____
William J. Lafferty, III
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>    Michael C. McKean,<br>    Blanca L. McKean,<br><br>                Debtors,<br>_____<br>    Mitch House,<br><br>                Plaintiff,<br><br>                vs.<br><br>    Michael C. McKean,<br>    Blanca L. McKean,<br><br>                Defendants.<br>_____ | Case No. 11-44932<br><br><br><br>Chapter 7<br><br><br><br><br>Adv. Pro. No. 11-4254 |

## **MEMORANDUM OF DECISION**

This matter came on for trial on April 16, 2012. Mitch House represented himself as Plaintiff. Michael and Blanca McKean represented themselves as Defendants. Trial commenced, and the introduction of evidence was completed on the evening of April 16,

2012.  The matter was reconvened telephonically on April 20, 2012, at 9:30 a.m., pursuant to the Court's oral order, to allow the parties to make closing statements.  At the conclusion of closing statements, the Court made extensive findings and issued its ruling on almost all of the matters at issue, reserving its determination of the dischargeability of one transaction upon further review of the evidence.

This Memorandum Decision is not intended to replace or supersede the findings and rulings the Court made orally during the April 20 proceedings.  Rather, the purpose of this Decision is to summarize, briefly, and for the convenience of the parties, the matters addressed during the Court's oral ruling, to clarify the Court's determination with respect to the one transaction reserved for further review, and to identify a few remaining issues that, after consideration, the Court believes the parties did not address, or did not adequately address, and give the parties the opportunity to present their views on those matters.

As background, Plaintiff has brought this action against Defendants seeking a determination that certain debts owed by Defendants to Plaintiff should be excepted from discharge in bankruptcy pursuant to the provisions of 11 U.S.C. §§ 523(a)(2)(A), (4) and (6).  In brief, Plaintiff and Defendants, who had a business and a social relationship prior to the occurrence of the events set forth in the Complaint, entered into an arrangement whereby Plaintiff took title to real property located at 770 Tunbridge, Danville, California (the "Real Property"), and Defendants retained

2

possession and occupancy of the Real Property in exchange for their agreement to make the payments on the loan secured by the Real Property. As part of the transaction whereby he acquired title to the Real Property, Plaintiff also (a) advanced the sum of approximately $123,000 to (i) pay closing costs of approximately $53,000 and (ii) pay $60,000 to Diana Holmgren, the prior owner of the Real Property, who had had a similar arrangement with Defendants, and who was owed that amount by Defendants as "rent" or more likely, unpaid monthly loan amounts, and (b) incurred new debt to "take out" World Savings Bank. There is no dispute but that, at the closing of the initial transaction, Plaintiff owned Real Property worth approximately $1.2 Million, encumbered by secured debt in the approximate amount of $790,000. Thereafter, from time to time until April 2009, Plaintiff also advanced varying amounts to Defendants, without any written agreement governing the repayment of these or other sums. Defendants made some payments to Plaintiff with respect to the loan amounts due on a monthly basis for the Real Property and with respect to amounts loaned to Defendants by Plaintiff, but stopped making such payments in July 2009.

Based on the facts presented, the Court issued the following oral rulings:

1. The Court determined that there is no basis to conclude that any debts owed by Blanca McKean to Plaintiff should be excepted from discharge on any basis offered. There was no evidence presented that Blanca McKean made any false statement to Plaintiff with respect to the transactions described, or acted in a fiduciary

3

capacity with respect to Plaintiff, or wilfully and maliciously injured the person or property of Plaintiff. Plaintiff purported to offer evidence to the effect that Blanca McKean "benefitted" from her husband's alleged fraud, but, as the Court instructed the Plaintiff on numerous occasions, in order to impute fraud from a husband to a wife, it is not sufficient merely to assert that the wife received a monetary benefit from husband's bad acts; there must be evidence that the wife actively participated in the wrong-doing. See <u>Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa)</u>, 287 B.R. 515, 522 (9th Cir. BAP 2002). There was absolutely no such evidence offered.

2. The Court determined that there was no basis to conclude that Michael McKean was acting in a fiduciary capacity within the meaning of section 523(a)(4) with respect to the transactions with Plaintiff set forth in the Complaint. Plaintiff attempted to rely for this showing upon an isolated incident in which Michael McKean acted as a financial advisor to Plaintiff with respect to the investment of one retirement account, but, as the Court stated at trial, that one transaction, which occurred before, and had nothing to do with, the transactions between these parties concerning the Real Property, cannot provide a basis to determine that Michael McKean acted as a fiduciary with respect to the loan transactions complained of. Plaintiff also attempted to base his claim that Michael McKean acted as a fiduciary on his alleged status as a "loan agent" with respect to two transactions involving the Real Property, i.e., the transaction via which Plaintiff originally came to own the

4

Real Property, which closed in January 2007, and the transaction via which the original loan was refinanced in February 2007.

With respect to the initial transaction, despite Plaintiff's continuous and argumentative assertions to the contrary and aggressive questioning of Defendants, there was no basis to find that Michael McKean acted as a loan agent with respect to that transaction. With respect to the refinance, Michael McKean admitted that he did act as a loan agent on this transaction. However, there was no evidence that there was any fraud or defalcation by Michael McKean with respect to the refinance; to the contrary, it appears that the transaction was handled competently, and that it achieved the desired effect—lowering the applicable interest rate on the loan on the Real Property—with full disclosure to Plaintiff of all material facts concerning that transaction.

As an aside, even if Michael McKean did become a "fiduciary" to Plaintiff under state law because of his status as a loan agent, Plaintiff presented no competent argument that Mr. McKean thereby took on a fiduciary capacity to Plaintiff within the meaning of section 523(a)(4) of the Code, which does not include every relationship that might be referred to as a "fiduciary" relationship under state law. See Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125-28 (9th Cir. 2003).

3. The Court determined that there was no basis to conclude that any debt from Michael McKean to Plaintiff resulted from a willful and malicious act by McKean causing harm to Plaintiff's person or property within the meaning of section 523(a)(6) of the

5

Code. The sole basis offered by Plaintiff for this liability was Michael McKean's alleged failure to repay the debts when Plaintiff made demand. As the Court also explained to Plaintiff, in order to establish liability under this section, it must be shown that at the time of the act complained of, the defendant had the intention to perform an act harming the plaintiff, as well as the intention to inflict the harm (or a substantial certainty that the harm would ensue).

For obvious reasons, a plaintiff may not establish liability under this section merely by asserting that he asked for payment, and payment was not made. See Orr v. Marcella (In re Marcella), 463 B.R. 212, 220 (D. Conn. 2011)(citations omitted).

4. Lastly, the Court determined that, for the most part, the debts incurred by Michael McKean to Plaintiff were not the result of an oral false statement, fraud, or false pretenses, within the meaning of section 523(a)(2)(A). For purposes of establishing liability under section 523(a)(2)(A) of the Code, a plaintiff must demonstrate that the Defendant (a) made a false statement about a material fact, (b) that he knew it was false when he made it, (c) that he made it with intent to deceive the plaintiff, (d) that the plaintiff reasonably relied on the statement, and (e) that the plaintiff was harmed by the false statement. Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000); Ghomeshi v. Sabban (In re Sabban), 384 B.R. 1, 5 (9th Cir. BAP 2008).

As the Court explained in detail during its oral ruling, while Plaintiff claims to have been deceived with respect to the transaction by which he ended up owning the Real Property, all relevant aspects of the transaction were disclosed to Plaintiff. Indeed, Plaintiff, who was experienced in real estate matters via his prior occupation as a real property appraiser, participated in the original loan and the shortly-following refinance, through which he acquired property worth not less than $1.2 Million in exchange for assumption of debt and payment of closing costs and other liabilities of no more than $800,000. And Plaintiff himself admitted during the trial that he was aware that he could have, for example, simply sold the Real Property at various points, paid the underlying debt secured by the property, repaid himself what he had loaned the Defendants, and realized substantial additional equity. That he chose not to do so, in the absence of any agreement between himself and Defendants limiting or restraining his actions with respect to the Real Property, demonstrates that any harm that ensued was eminently preventable by Plaintiff himself.

5. To the extent that Plaintiff thereafter lent Defendants additional moneys, with the limited exception of the funds advanced in March and April of 2009, which the Court will address below, there simply was no competent evidence that such funds were obtained via a false statement, fraud, or false pretenses. The parties presented directly conflicting testimony concerning the alleged purposes for the advances, with Plaintiff asserting, without any independent corroboration, that these amounts were sought to "clean

7

Case: 11-04254   Doc# 38   Filed: 05/15/12   Entered: 05/16/12 16:33:17   Page 7 of 13

up Defendants' credit," while Defendants claim that to the extent any rationale for the advances was requested, they replied, truthfully, that the bulk of the moneys went to improving the Real Property (for which they supplied receipts for substantial amounts expended) or for their living expenses. But again, it simply does not appear that these advances were procured via any fraud or false statements, and, in any event, for much of this time, Plaintiff could simply have sold the Real Property and made himself whole.

6. The Court also indicated that, with respect to the advance of $14,000 on April 9, 2009, it reached a different conclusion. The Court believes that the evidence demonstrated, and Defendant Michael McKean did not entirely dispute, that this advance was made based upon Defendant Michael McKean's statement that he expected shortly to receive commissions from real estate sales that had been or would soon be completed. The Court found this testimony credible because, by the time of this advance, and in view of Defendants' failure to make payments then due, as well as the understanding that the equity in the Real Property was in all likelihood at least substantially eroded, the Court believed that it was highly unlikely that Plaintiff would have advanced any further funds without an express statement from Michael McKean respecting a specific source of repayment. The Court is also convinced that Michael McKean's statement regarding the source of funds of repayment was false when made.

During this portion of the Court's ruling, Plaintiff inquired whether the Court would also apply the same rationale to an advance

8

of $10,900 made on March 11, 2009, which Plaintiff asserted was also made based upon false statements regarding commissions to be paid in the immediate future.  Having now reviewed the trial briefs of the parties and the testimony of Michael McKean, the Court does conclude that the $10,900 advance should also be excepted from discharge as the product of a false statement or fraud by Defendant Michael McKean.[1]  Therefore, subject to the determination of how to apply amounts repaid by Mr. McKean during April and May 2009, the Court concludes that the sum of $24,900 should be deemed nondischargeable under section 523(a)(2)(A).

    7.  In concluding that the March and April 2009 advances of $24,900 in the aggregate should be excepted from discharge under section 523(a)(2)(A) of the Code, the Court is mindful of the requirement of that section that an oral false statement about the financial condition of the debtor may not form the basis for a finding of non-dischargeability.  For the benefit of the parties, and of any court reviewing this matter on appeal, this Court wishes to stress that it has considered whether a statement that repayment will be made from funds to be received by the debtor falls within the term "statement respecting a debtor's . . . financial

---

[1] Although Michael McKean contested at trial whether he had received the funds referenced in the March 11 or the April 9 transactions, the Court did not find Mr. McKean's quasi-denial credible, particularly in light of the fact that Mr. McKean admitted the accuracy of Plaintiff's calculations re amounts advanced, including the March and April 2009 advances, during his deposition.  See, Reporters Transcript of Deposition of Michael at 8:6-8; 10:11-24.

9

condition," and concludes that it does not.  The Code does not define the term "statement respecting financial condition," and the intended breadth of that term is not without dispute in the case law.  This Court however, finds helpful, and ultimately persuasive, the recent opinion of the Bankruptcy Appellate Panel in the case <u>Barnes v. Belice (In re Belice)</u>, 461 B.R. 564 (9th Cir. BAP 2011), in which the Panel reviewed the various opinions interpreting the language of section 523(a)(2)(A) and concluded that the Ninth Circuit has elected to follow a "narrow" reading of that language. <u>In re Belice</u>, 461 B.R. at 574-77.  Accordingly, this Court will limit its consideration of the term "statement respecting financial condition of the debtor" to those statements that "present a picture of the debtor's overall financial health," and will not impose that term upon an express statement of fact concerning a specific source of repayment of moneys to be advanced that is made to induce that advance.

    8.  Plaintiff also requested as damages at trial amounts properly characterized as "consequential damages," and amounts expended for attorneys' fees.  As the Court indicated to Plaintiff prior to and during the trial, consequential damages could not be awarded because Plaintiff's Complaint had not sought such damages, and Plaintiff had not made a timely motion to amend the Complaint. In addition, the Court did not believe that Plaintiff had made out a case for the sort of consequential damages sought, e.g., loss of income from a limousine business, additional insurance expenses, and additional interest charges on a personal credit card, let alone

10

that such damages should be non-dischargeable, if proven.  With respect to the claim for attorneys' fees, there was simply no contractual or statutory basis for recovery of such fees.

9.  Finally, in reviewing the record again in preparing this Memorandum Decision, the Court has concluded that there are two issues that were not addressed adequately by the parties at trial:

    a.  The Court has determined that the March 11 and April 9 transfers should be excepted from discharge.  However the Court also notes that Mr. McKean repaid the Plaintiff $5000 on April 24, 2009 and $8000 on May 21, 2009, i.e., after the last advance from Plaintiff.  The Court is unaware of any agreement or convention between the parties for applying or allocating amounts repaid (i.e., should amounts repaid be applied to the oldest unpaid amount or should these repayments be applied to the last advances?), particularly in light of the nature of the false statement that the Court concluded justifies relief under section 523(a)(2)(A).  The Court would like the parties to address this issue with a pleading to be filed within 20 days of the date of this Memorandum Decision;

    b.  The Court is uncertain whether the parties are in agreement with respect to the aggregate amount due and unpaid from Defendants (without regard to the consequential damages and attorneys' fees which are not being allowed).  While the bulk of these amounts will be dischargeable under the Court's ruling, the Court is still obliged to enter a Judgment for the entire amount due and owing, which will then constitute a liquidation of a claim against Defendants.  The testimony of Mr. McKean at trial indicated

11

that he believed that he was substantially in agreement with the
calculations offered by Plaintiff regarding unpaid amounts, implying
that there is at least some basis for Mr. McKean to dispute the
amount sought by Plaintiff.  The Court would like the parties also
to provide, within 20 days of the date of this Memorandum Decision,
their calculations of the amounts due and owing as of June 1, 2012,
including any amounts claimed as interest.

**END OF DOCUMENT**

|   |   |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | |
| 3 | Mitch House |
|   | 154 Crest Avenue |
| 4 | Alamo, CA 94507 |
| 5 | Michael C. McKean |
|   | Blanca L. McKean |
| 6 | 1755 3rd St. |
|   | Livermore, CA 94550 |

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
1300 Clay Street (2d fl.)
Oakland, CA. 94612